H. Richard HELLSTROM, M.D.,
Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, Philip Thomas, Director, Syracuse Medical Center,
and E. Douglas Holyoke, M.D., and
his successor Chief of Staff, Syracuse
Medical Center, Defendants–Appellees.

Docket No. 01–6245.

United States Court of Appeals,
Second Circuit.

Sept. 9, 2002.

Mimi C. Satter, Esq. (Richard A. Maroko, Esq., on the brief), Satter & Andrews, LLP, Syracuse, NY, for Plaintiff–Appellant.

Charles E. Roberts, Assistant, United States Attorney, Northern District of New York, for Joseph A. Ravone, United States Attorney, Northern District of New York, for Defendants–Appellees.

Present MESKILL, STRAUB and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *C.J.*), it is hereby

**ORDERED, ADJUDGED, AND DE-CREED** that the judgment of the District Court is **AFFIRMED.**

The following facts are undisputed except as noted. Plaintiff, Dr. H. Richard Hellstrom, was the laboratory chief at the Veterans Administration Medical Center (VA) in Syracuse, New York for sixteen years. Hellstrom supervised approximately fifty people in this position. The Acting Director of the VA in Syracuse, Philip Thomas, met with Hellstrom on November 1, 1994 to discuss a report by a site team visit at the medical center that concluded that there was an "unhealthy" working environment in the laboratory. Thomas began the meeting by explaining to Hellstrom his concerns about the environment in the laboratory and the perception that there was a hostile work environment. Hellstrom then raised the issue of former laboratory employee, Lynn Scheffer–Wilson, who had made allegations of sexual harassment against Hellstrom. Hellstrom wanted this employee transferred back into the laboratory so he could discipline her for conduct unrelated to her EEO charge. Thomas refused to discipline Scheffer–Wilson, explaining to Hellstrom that it could look like she was being disciplined in retaliation for her EEO charge.[1] Hellstrom became very agitated and expressed his frustration that an employee who files an EEO charge would be insulated from any discipline. According to Thomas, Hellstrom stated that "people who aspired to positions of Directors must prostitute themselves in order to address the issues in EEO areas as opposed to doing what is right." Thomas tried to change the conversation away from Scheffer–Wilson and back to the report and complaints by former employees that Hellstrom was prone to temper tantrums, especially against women, that his outbursts were intimidating to employees, and that Hellstrom and his assistant, David Morgan, were vindictive toward employees whom they believed had performance problems. Hellstrom accused Thomas of trying to intimidate and bully him. The Director explained that he was not trying to intimidate Hellstrom, but he was trying to communicate his concerns and the need for change in the laboratory. Hellstrom then told Thomas that he thought he was unfit for appointment as permanent director because he lacked the personnel skills and temperament to manage a complex medical center. Hellstrom criticized Thomas for basing personnel decisions on considerations other than merit. Thomas told Hellstrom that he did not have confidence in him or the laboratory as far as EEO matters were concerned.

After the meeting, Thomas arranged for the EEO Program Manager, Jerry Ellis, to conduct an EEO investigation of the environment in the laboratory and the allegations against Hellstrom. Ellis died shortly after issuing his report and the government cannot locate the report. Thomas testified at his deposition that Ellis found Scheffer–Wilson to be of dubious credibility, but that Ellis also told him in an exit interview that there were "problems with the [laboratory] environment," that it was "a work environment where people were ill at ease" and that there was a "problem with the interpersonal dynamics."

---

1. An EEO investigation found that Hellstrom had engaged in sexual harassment.

In October of 1995, Morgan (Hellstrom's administrative officer) made a complaint of racial discrimination in hiring against Hellstrom. In brief, Hellstrom allegedly made inappropriate comments about a job applicant—calling him too old, saying he didn't want to hire a veteran, and asking "do you think this guy is black? Who lives in Newark except blacks?" According to Morgan, Hellstrom told him to call the applicant and "try to find something that would disqualify him." Morgan reported the foregoing to the personnel office.

Chief of Staff Douglas Holyoke, M.D., met with Hellstrom regarding Morgan's allegations. Hellstrom denied making any comments about the candidate's age or race and insisted that he did not consider factors like age and race in hiring decisions. Holyoke felt that Hellstrom was not entirely truthful, and he recommended that a formal investigation be conducted. Two investigators spent a week at the VA and interviewed fifteen staff members.[2] Employees told investigators that Hellstrom often made comments about how he disliked the director and did not trust him. When investigators interviewed Hellstrom about his hiring practices, he stated that "I am personally not a believer in affirmative action."[3] The investigators issued a 500-page report (including exhibits) and concluded that Hellstrom (1) engaged in racially discriminatory hiring practices and (2) created a hostile work environment. The report recommended that Hellstrom be relieved of all hiring authority in the lab and that he be relieved of all responsibilities as the chief of the lab. Based on this report, the VA decided to demote Hellstrom to a non-managerial position.

Hellstrom filed several grievances challenging his reassignment, but they were all denied. He then filed the instant lawsuit in United States District Court for the Northern District of New York. The district court denied Hellstrom's request for an injunction and granted the defendants' motion for summary judgment. Hellstrom appealed to the Second Circuit and this court vacated and remanded, holding that Hellstrom should have been allowed to conduct discovery before the grant of summary judgment. *See Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94 (2d Cir.2000). The parties returned to the district court and engaged in discovery, including the deposition of five witnesses.

The district court, after hearing oral argument, again granted the defendants' motion for summary judgment and dismissed the case. The court held that Hellstrom's criticism of the Acting Director was not protected speech as the criticism was being made in Hellstrom's role as an employee—not as a private citizen. The court recognized that while Hellstrom's comments about his opposition to affirmative action were, in the abstract, a matter of public concern, Hellstrom made the comments as part of his personal defense to charges of discrimination and was motivated to make the comments out of purely personal interest. The court also concluded, in the alternative, that Hellstrom failed to show any causal connection between his comments and the decision to demote him fourteen months later. The court noted that in addition to the temporal gap between the two events, there was a significant intervening event—the investigation that concluded that Hellstrom had engaged in racial discrimination in hiring and prolonged psychological abuse of staff members.

---

2. The investigators were VA employees from other VA medical centers.

3. Hellstrom claims that it was this statement about affirmative action that led to his reassignment.

On appeal, plaintiff Hellstrom argues that: (1) the district court erred in granting defendants' motion for summary judgment in its finding that the plaintiff's criticism of the Acting Director and his opposition to affirmative action were not matters of public concern and thus not protected speech; and (2) the district court erred when it found that the plaintiff failed to show that there was a causal connection between plaintiff's speech and his demotion.

## STANDARD OF REVIEW

The grant of a summary judgment motion is reviewed *de novo*. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999). Summary judgment is properly granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See id.* at 322. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The district court is instructed to resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). However, the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## *DISCUSSION*

To state a claim for First Amendment retaliation, a public employee must establish that his at-issue speech: (1) can be "fairly characterized as constituting speech on a matter of public concern" and (2) was a "substantial" or "motivating" factor in his employer's adverse employment decision. *Hellstrom*, 201 F.3d at 97 (quoting *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), respectively); *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir.1991). Whether an employee's speech addresses a

matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick*, 461 U.S. at 147–48. Speech pertaining to internal personnel disputes and working conditions ordinarily will not involve matters of public concern. *See id.* at 148.

■ As for his comments about Acting Director Thomas, Hellstrom argues that "comments on the 'performance and integrity of a highly visible public official … are unquestionably issues affecting the social and political concerns of a community' " (quoting *Gardetto v. Mason*, 100 F.3d 803, 813 (10th Cir.1996)[4]). Hellstrom argues that his speech concerned Thomas's fitness for permanent appointment as Director and the general management of the VA. According to Hellstrom, he was criticizing Thomas and the VA policy of insulating from discipline those employees who had filed EEO complaints. Hellstrom argues that the management of public agencies, such as the VA, is an especially compelling matter of public concern and an issue that had been in the Syracuse newspapers.

The defendants counter that Hellstrom's criticism of Thomas at the November 1, 1994 meeting was an inappropriate outburst by an employee, and not a constitutionally protected discourse on the Director's qualifications. Defendants describe Hellstrom's criticisms as a personal attack on Thomas's ethics and morality. Defendants argue that matters that are personal or involve individual personnel disputes and grievances are not protected by the First Amendment.

The defendants' arguments are supported by Supreme Court and Second Circuit precedent. In *Connick*, the Supreme Court held that when a public employee speaks about matters only of personal interest, the federal court is not the appropriate forum to resolve the wisdom of a personnel decision. 461 U.S. at 147. The lawsuit at issue in *Connick* was brought by an assistant district attorney, who after being transferred to a different division, distributed a questionnaire to coworkers soliciting their views primarily about internal office matters, such as office morale, office transfer policy, and the level of confidence in supervisors. *Id.* at 141. The court held that most of the questions did not involve matters of public concern, but rather were "mere extensions of [plaintiff's] dispute over her transfer." *Id.* at 148. The Court noted that the purpose of the questionnaire was not to evaluate the performance of the office, but instead to "gather ammunition for another round of controversy with her superiors." *Id.* However, the Court found that one question in the questionnaire did touch upon a matter of public concern—whether district attorneys ever felt pressured to work in political campaigns. *Id.* at 149.

---

4. Note that in *Gardetto* the Tenth Circuit held that a public college employee's endorsement of nonincumbent candidates for positions on the board of trustees involved speech on a matter of public concern. 100 F.3d at 812. The court also found to be protected speech statements by the employee criticizing the college president for holding himself out as a "doctor" when he did not have a Ph.D. or other doctoral degree, as well as a public employee's speech about the use of public funds. *Id.* at 812–13. However, the court concluded that management practices of a public entity, an employee's complaints about the proposed closing of a branch of a public university or its spending practices, or details of internal budgetary allocations at institutions of public education are not matters of public concern. *Id.* at 813–14. The court explained that in classifying particular speech, courts focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal issues or whether it had a broader public purpose. *Id.* at 812.

The Second Circuit's decision in *Ezekwo* also supports the defendants' position. In *Ezekwo*, the plaintiff, a medical doctor in an ophthalmology residency program, made several oral and written complaints to the director of the program about the program and the education and attention she was receiving. 940 F.2d at 777–78. Her complaints included a charge that the director had poor management and motivational skills and the lack of proper hospital maintenance. *Id.* at 778. Plaintiff sued alleging that she was passed over for the position of Chief Resident in violation of the First Amendment because she had expressed dissatisfaction with the program and attending physicians. *Id.* at 779. The Second Circuit held that Ezekwo's statements did not address matters of public concern, but that instead her complaints were personal in nature and generally related to her own situation within the residency program. *Id.* at 781. Based on her numerous complaints, the court determined that Ezekwo's primary aim was to protect her own reputation and individual development as a doctor. *Id.*

Relying on these cases, the district court correctly found that Hellstrom's criticism of Thomas was not a matter of public concern. *See also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 106 (2d Cir.2001) (stating that speech pertaining to a personal matter is not afforded First Amendment protection and noting that "[i]f every speech-related personnel decision were subjected to 'intrusive oversight by the judiciary in the name of the First Amendment,' effective government administration would be threatened") (quoting *Connick,* 461 U.S. at 146). Hellstrom was angry at Thomas because he refused to discipline another employee, who had made allegations of sexual harassment against Hellstrom, and his outbursts regarding Thomas and his shortcomings as a director were directly related to this fact. As such, Hellstrom's complaints about Thomas were motivated by personal interests and anger and not some altruistic desire to improve the VA or protect the public.[5]

Similar conclusions apply to Hellstrom's comment to investigators that he was not in favor of affirmative action. While a public employee's position on affirmative action may be a matter of public concern in some situations, when viewed in the context of this particular case, Hellstrom's comment was a response to an investigation into allegations that he had discriminated in hiring based on age, veteran status and race. Hellstrom made the comment in response to the investigators' questions regarding his hiring practices. While speech need not be made publicly to be protected, *see Ezekwo,* 940 F.2d at 781, in the instant case the sole purpose of the comment that Hellstrom made to investigators regarding affirmative action was to defend himself against charges of discrimination and explain how he makes hiring decisions. This was not a situation where Hellstrom was starting a dialogue on the issue of affirmative action with supervisors or coworkers or seeking to change a policy at the VA. As such, the comment was personal in nature and made out of self-interest.

Having determined that plaintiff's speech was not protected, we need not reach plaintiff's other argument that the court erred when it found that he failed to show that there was a causal connection

---

**5.** Note that Hellstrom referred to Thomas as the "enemy" to staff members and spread rumors that Thomas was having an affair with a staff member. Viewed against this backdrop, Hellstrom's criticisms of Thomas's suitability as director appear to be highly personal.

between plaintiff's speech and his demotion. We have reviewed all of the appellant's other arguments. We affirm the judgment of the district court.